**UNITED STATES of America**

v.

**Zachary WILLIAMS.**

**Civ. No. HNM–96–18**
**Criminal No. HAR–88–0227.**

United States District Court,
D. Maryland.

Jan. 31, 1997.

Lynne A. Battaglia, United States Attorney for the District of Maryland, Andrea L. Smith, Assistant United States Attorney, Baltimore, MD, for U.S.

Fred Warren Bennett, Baltimore, MD, for defendant.

### MEMORANDUM

MALETZ, Senior Judge.[1]

On March 9, 1990, a jury convicted defendant, Zachary Williams, of one count of conspiring to distribute and possess with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and four counts of using a telephone in the commission of a felony in violation of 21 U.S.C. § 843(b). On July 13, 1990, the court sentenced Williams to 168 months imprisonment. The Fourth Circuit affirmed the conviction, vacated his sentence, and remanded with directions to sentence Williams as a career offender. *United States v. Williams*, No. 90–5827, slip op., 936 F.2d 568 (4th Cir. July 8, 1991) (unpublished). On July 10, 1992, the court sentenced Williams to 188 months imprisonment. Both the government and Williams noted appeals. These appeals were subsequently abandoned and dismissed by agreement of the parties.

Presently pending before the court is Williams's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (1994), *amended by* Antiterrorism

---

**1.** Of the United States Court of International Trade, sitting by designation.

and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Williams contends that he is entitled to a new trial because his appellate counsel was ineffective for failure to raise on direct appeal a "winning" claim of discriminatory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He also contends that the court erred in determining his sentence. For the reasons set forth below, the motion will be denied.

## I.

■ Williams first contends that a new trial is required because his appellate counsel was ineffective for failure to raise on direct appeal a "winning" claim of discriminatory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the Supreme Court held that the Equal Protection Clause guarantees that the government will not exclude members of the defendant's race from the jury on account of race and that such conduct also discriminates against the excluded juror. To succeed on this claim, Williams must show that if appellate counsel had raised the *Batson* claim on direct appeal, there would have been a reasonable probability that it would have succeeded. *See Bond v. United States,* 77 F.3d 1009, 1014 (7th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 270, 136 L.Ed.2d 194 (1996). Williams has failed to make this showing.

The government exercised eight peremptory challenges in the process of selecting the jury. Seven were employed to strike black jurors. The jury as finally composed included five black jurors and one black alternate juror. The court required the government to present the reasons for its peremptory strikes of black jurors. The government explained that it struck Minnie Nickens because she gave the prosecutor an undesirable look during a bench conference and because the prosecutor did not care for her hat or dress. The government struck · Francis Walker because he appeared to have a foreign accent and it struck Elmo Smith because he consistently avoided eye contact with the prosecutor. The government struck Joseph Brummell because he had two cousins who died of drug-related incidents and be-

cause he had a son who was serving time for rape. It struck Bobby Vereen because he had an assault conviction and it struck Helen Martin.because she wanted to leave town in a few days, because she had a grandson convicted of armed robbery, and because she had a nephew in jail for smoking marijuana. The government struck Walter Opher because he had two sons with substance abuse problems.

These reasons " 'were not intrinsically suspect, [and] were adequately supported by observable fact.' " *United States v. Johnson,* 54 F.3d 1150, 1163 (4th Cir.), (citation omitted), *cert. denied,* — U.S. —, 116 S.Ct. 266, 133 L.Ed.2d 188 (1995). The court correctly determined the government's reasons to be race-neutral, non-pretextual reasons, and therefore Williams's claim of ineffective assistance of appellate counsel has no merit.

## II.

### A.

■ Williams next contends that the court erred in determining the quantity of drugs to be used in arriving at his base offense level under the Sentencing Guidelines. He claims that the court misapplied section 1B1.3, the relevant conduct guideline, by holding him responsible for an amount in excess of that which was reasonably foreseeable to him within the scope of his unlawful agreement. This specific issue was fully considered and decided adversely to Williams on direct appeal. *See Williams,* No. 90–5827, slip op. at 4. If an issue has been decided adversely to a defendant on direct appeal, it cannot be relitigated on collateral attack. *Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir.), *cert. denied,* 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976); *see also United States v. Warner,* 23 F.3d 287, 291 (10th Cir.1994) (issue considered and disposed of on direct appeal could not be raised under § 2255); *United States v. Redd,* 759 F.2d 699, 701 (9th Cir.1985) (same); *United States v. Gaus,* 751 F.2d 1506, 1507 (8th Cir.1985) (same). Relitigation is permitted, however, if there has been an intervening change in the law. *Davis v. United States,*

417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974).

· Williams asserts that the case of *United States v. Irvin*, 2 F.3d 72 (4th Cir.1993), *cert. denied*, 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994) represents an intervening change in the law and that this "new law" should inure to his benefit. The court does not agree, because *Irvin* is not applicable to Williams's case and does not change the Fourth Circuit's interpretation of the relevant conduct guideline. *Irvin* held that a district court must apply the principles set forth in the relevant conduct guideline to determine the quantity of drugs reasonably foreseeable to a defendant before applying· the mandatory minimum sentence provisions of 21 U.S.C. § 841. Williams's case does not involve the mandatory minimum sentence provisions, because the conspiracy he was convicted of ended before November 18, 1988, when, pursuant to congressional action, the penalties under § 841 were made applicable to § 846 conspiracy cases. *See* 21 U.S.C. § 846, *amended by* Asset Forfeiture Amendments Act, Pub.L.No. 100–690, Title VI, § 6470(a), 102 Stat. 4377 (1988). Rather, Williams's case is concerned with the application of the relevant conduct guideline. Furthermore, because the holding in *Irvin* was limited to 21 U.S.C. § 841's wholesale incorporation of the Guideline's concept of reasonable foreseeability, *Irvin* adds nothing to the Guideline's law of the Fourth Circuit that obtained at the time of Williams's sentencing. *Cf. United States v. Tayman*, 885 F.Supp. 832, 848 n. 55 (E.D.Va.1995) ("Although it was uncertain at the time of Tayman's sentencing in May 1992 whether 21 U.S.C. § 841(b) contained an implicit 'reasonable foreseeability' standard, it was very clear, then and now, that the Sentencing Guidelines employ this standard."). Thus, *Irvin* does not represent an intervening change in the law of the Fourth Circuit, so as to permit relitigation of this claim.[2]

■ Williams also urges that the law as to the relevant conduct of a coconspirator has been "clarified" by certain amendments to the Sentencing Guidelines that took effect after his sentencing and direct appeal, and that this "clarification" of the law entitles him to relitigation of his claim. This claim has no merit. First, there is no authority for the proposition that a "clarification" of the law triggers an exception to the rule of *Boeckenhaupt* against relitigation of claims fully considered and disposed of on direct appeal. Second, as more fully discussed below, the court cannot agree that the amendments to the Guidelines cited by Williams, Amendment 439 (effective November 1, 1992) and Amendment 503 (effective November 1, 1994), represent an intervening change in the law of the Fourth Circuit, so as to permit relitigation of the claim under *Davis*.

■ Amendment 439 did not alter the language of the relevant conduct guideline itself but rather amended the commentary by deleting Application Note One and inserting Application Note Two. Application Note Two now states, in part, that a defendant is accountable for the conduct of others that was both: "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." U.S. Sentencing Guidelines Manual § 1B1.3, comment. (n.2) (1995).

It was the view of the Fourth Circuit at the time of Williams's sentencing, and it remains the view today, that the relevant conduct guideline requires that the conduct be reasonably foreseeable within the scope of the jointly undertaken criminal activity. *See United States v. Gilliam*, 987 F.2d 1009, 1012–13 (4th Cir.1993) (applying USSG § 1B1.3, comment. (n.1) (amended 1992)). In *Gilliam*, the court interpreted the commentary in effect at Williams's sentencing consistent with the subsequent amendments. The court stated: "[I]n order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement *and* must have been reasonably foreseeable to the defendant." *Id.* (emphasis added). The court further explained that "a court should focus on

---

**2.** Because the court concludes that *Irvin* is not an intervening change in the Guideline's law of the Fourth Circuit, the court does not consider the matter of the retroactivity of *Irvin* to Williams's case.

the language of the commentary that describes conduct that is 'reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake.'" *Id.* at 1013 (citation omitted).

The Sentencing Commission expressly stated that the purpose of the amendment was to "clarif[y] and more fully illustrate[ ] the operation of th[e] guideline." USSG App. C (Amendment 439). " 'Such an amendment changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant.' " *United States v. Capers,* 61 F.3d 1100, 1109 (4th Cir.1995) (citing *United States v. Smaw,* 22 F.3d 330, 333 (D.C.Cir.1994)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1830, 134 L.Ed.2d 935 (1996).

Other courts, consistent with the language used by the Sentencing Commission, have held that Amendment 439 to section 1B1.3 is clarifying. *See United States v. Lambert,* 995 F.2d 1006, 1009 n. 3 (10th Cir.) (Amendment 439 did not substantively alter guideline, but merely clarifies and explains its operation), *cert. denied,* 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Evbuomwan,* 992 F.2d 70, 73 (5th Cir.1993) (amendments to section 1B1.3, effective November 1, 1992, clarify requirements for sentence enhancement); *United States v. O'Campo,* 973 F.2d 1015, 1023 (1st Cir.1992) (1992 Amendment to section 1B1.3 is a "clarifying" amendment).

■ Amendment 503 also is not a change in the law of the Fourth Circuit, but a clarification of the existing principle that conduct of others must be reasonably foreseeable within the scope of the jointly undertaken criminal activity. Like Amendment 439, it did not alter the text of the guideline itself but rather amended the commentary by inserting a paragraph to "clarif[y] the operation of § 1B1.3 with respect to the defendant's accountability for the actions of other conspirators prior to the defendant joining the conspiracy." USSG App. C (Amendment 503). The Commission expressly stated that "[t]he amendment is in accord with the rule stated in recent caselaw." *Id.*

Amendment 503 states:

A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct.... The Commission does not foreclose the possibility that there may be some unusual set of circumstances in which the exclusion of such conduct may not adequately reflect the defendant's culpability; in such a case, an upward departure may be warranted.

USSG App. C (Amendment 503).

Fourth Circuit precedent is consistent with the amended commentary. The relevant inquiry is still the scope of the defendant's agreement with his coconspirators and what was reasonably foreseeable within the scope of that agreement. *See Gilliam,* 987 F.2d at 1012–13. The Fourth Circuit has never held that a new entrant can have his base offense level enhanced at sentencing for drug distributions made before his entrance merely because he knew they took place. Mere knowledge or foreseeability has never been enough. *Cf. Capers,* 61 F.3d at 1112–13 (1993 Amendment to the commentary of USSG § 3B1.1 is substantive, not clarifying, amendment because its retroactive application would require court to scrap its earlier interpretation of that guideline).

In sum, the subsequent amendments to the relevant conduct guideline, section 1B1.3, do not represent a change in the law of the Fourth Circuit, and thus Williams cannot relitigate his claim on this basis.

Accordingly, the court is barred from reaching the merits of Williams's claim that the court erred in determining the amount of drugs attributable to him at sentencing.

#### B.

■ Williams also contends that the three-year term of supervised release imposed on him is invalid and should be stricken. He relies on the government's concession on this issue. The government cites *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) in arguing that the older version of 21 U.S.C. § 846, under which Williams was convicted, did not authorize the

imposition of a term of supervised release. In *Bifulco*, the Supreme Court held that the older version of § 846 did not permit a sentencing court to impose a "special parole term" in addition to imprisonment. That version provided that a violation was punishable "by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the ... conspiracy." 21 U.S.C. § 846 (amended November 18, 1988). The court is not persuaded. First, supervised release is not the equivalent of a special parole term. Second, and more importantly, 18 U.S.C. § 3583(a) authorizes a court to include a term of supervised release following any sentence to a term of imprisonment. This statute, enacted as part of the Sentencing Reform Act of 1984, which authorized the Sentencing Guidelines, became effective on November 1, 1987.

Williams was charged with participating in a conspiracy to distribute and possess with intent to distribute heroin and cocaine from in or about the beginning of 1986 until on or about late July, 1988, in violation of 21 U.S.C. § 846. Williams's conspiracy occurred in part after the effective date of the provision, and thus 18 U.S.C. § 3583(a) authorizes imposition of a term of supervised release. *Accord United States v. Wagner*, 999 F.2d 312, 314 (8th Cir.1993) (section 3583(a) authorizes imposition of term of supervised release for conspiracy convictions under pre-amendment 21 U.S.C. § 846); *United States v. Osborne*, 931 F.2d 1139, 1144–46 (7th Cir.1991) (same); *United States v. Van Nymegen*, 910 F.2d 164, 166–67 (5th Cir.1990) (same). *Cf. United States v. Shulman*, 940 F.2d 91, 94 (4th Cir.1991) (supervised release improperly imposed on defendant who was convicted of offense occurring in 1984).

Williams's conviction for conspiracy to distribute and possess with intent to distribute heroin and cocaine under 21 U.S.C. § 846, based on 5 or more kilograms of cocaine, is a Class A felony because it carries a maximum sentence of life imprisonment. *See* 18 U.S.C. § 3559(a)(1)(A) (1988). Section 3583(a) authorizes a term of supervised release of up to five years for Class A felonies. 18 U.S.C. § 3583(b)(1).

The Sentencing Guidelines require a court to include a term of supervised release in any case in which a court imposes a sentence of imprisonment of more than one year. USSG § 5D1.1(a) (1989). Because Williams was convicted of a Class A felony, the Guidelines require a term of supervised release of at least three years but not more than five years. *See* USSG § 5D1.2(b)(1). *See generally* Harold Baer, Jr., *The Alpha & Omega of Supervised Release*, 60 Alb.L.Rev. 267, 271–76 (1996) (discussing the rules governing inclusion of a term of supervised release). Thus, Williams's sentence including a three-year term of supervised release falls within the range authorized by the Sentencing Guidelines.

Accordingly, the court denies the parties' request that the three-year term of supervised release be stricken.

### C.

▮ Lastly, Williams requests that the court grant him a downward departure from the Sentencing Guidelines on the ground of successive state/federal prosecutions for the same conduct. As the basis for this request, he cites *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), which held that, given the circumstances of that case, the district court did not abuse its discretion in granting a downward departure on the ground that the defendants were tried in federal court after an acquittal in state court. Here, by contrast, the court, even without regard to the retroactive nature of Williams's request, concludes that all the circumstances in the present case are such as to negate exercise of the court's discretion to grant a downward departure.

### III.

For the reasons set forth above, Williams is not entitled to relief on any of his claims brought pursuant to § 2255. Therefore, the motion is denied.